**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JACKIE DEWAYNE REYNOLDS** | § | |
| | § | |
| **v.** | § | **A-05-CA-638 LY** |
| | § | |
| **CAROLE STRAYHORN, et al.** | § | |

**INTERIM REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Investigator Steve Suriano's Motion to Dismiss filed September 21, 2005 (Clerk's Doc. No. 26); Defendant Sheriff Richard Hernandez's Motion to Dismiss filed September 21, 2005 (Clerk's Doc. No. 27); Defendant Bastrop County District Attorney Goertz's and Assistant District Attorney Holton's Motion to Dismiss filed September 21, 2005 (Clerk's Doc. No. 28); Defendant Bastrop County District Attorney Goertz's, Assistant District Attorney Holten's, Sheriff Hernandez's and Investigator Suriano's Supplementation to Their Motions to Dismiss filed August 14, 2006 (Clerk's Doc. No. 105); Plaintiff's Brief in Opposition to Defendant Bastrop County Et. Al's Motions to Dismiss filed October 2, 2006 (Clerk's Doc. No. 126); and Plaintiff's Supplemental Response in Opposition to Defendant Bastrop County, et al's Motion s for Summary Judgment filed November 2, 2006 (Clerk's Doc. No. 146). The District Court referred all pending motions to the undersigned Magistrate Judge for resolution or report and recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  FACTS & PROCEDURAL HISTORY

This suit was filed on August 23, 2005.  Plaintiff is proceeding *pro se*.  While the complaint is voluminous, its allegations can be summarized as follows:[1] from April 2003 to April 2004, Plaintiff Jackie Reynolds (Plaintiff) was a counselor at Woodside Trails, a therapeutic camp for boys ranging in age from 9 to 17, many of whom were placed there for sex crimes (and many of whom had themselves been the victims of sexual abuse).  *See* Plaintiff's Complaint at ¶¶ 21-24.  Plaintiff worked closely with one of the boys, J.D., and developed a bond with him.  Shortly after Plaintiff stopped working with him, J.D. accused Plaintiff of sexually abusing him.  *Id.* at ¶¶ 35-41, 124.  J.D. initially reported the abuse to the Texas Abuse and Neglect Hotline on July 9, 2004.  *Id*. at ¶¶ 41.  He was then interviewed by Defendant Suriano who subsequently prepared a probable cause affidavit, submitted it to a magistrate, and that magistrate then authorized the issuance of an arrest warrant for Plaintiff.  *See* Defendants Bastrop County, District Attorney Brian Goertz, Assistant District Attorney Kathy Holton, Sheriff Richard Hernandez, and Investigator Steve Suriano's First Amended Answer (hereinafter "First Amended Answer") at 4.  This allegation and arrest – Plaintiff was arrested on July 22, 2004 – came in the midst of reports and rumors that these types of incidents were not uncommon at Woodside Trails, and the Department of Family and Protective Services began an investigation into the camp.  On August 13, 2004, DFPS made the decision to remove all the children placed there by it from Woodside Trails.  *Id.* at ¶¶ 113-118 (DFPS later ordered the so-called "private pay" parties to leave the camp as well).  On August 16, 2004, J.D. recanted his claim of sexual abuse by Plaintiff to the lead DFPS investigator, Defendant Shaw, and Defendant Suriano.

_____

[1]The version of the facts presented draw almost exclusively from Plaintiff's filings in this case.  When they are drawn from other parties' filings, the Court makes the appropriate citation.

*Id.*, ¶ 48.  Notwithstanding the recantation, (and other evidence in their possession)[2], the Bastrop County District Attorney's Office decided to present the case to a grand jury.  *Id.* at ¶ 148; *see also* Affidavit of Charles Frigerio, Exh. B (Clerk's Doc. No. 105).  On August 25, 2004, based largely on Defendant Suriano's presentation of evidence, the grand jury indicted Plaintiff for aggravated sexual assault of a child.  *See* Affidavit of Charles Frigerio, Exh. C, at p. 94; Complaint, at ¶ 313. Subsequently, the Bastrop County District Attorney's Office dismissed the indictment against Reynolds.  *Id.*, ¶ 59.

Plaintiff then filed his Complaint, alleging violations of 42 U.S.C. §§ 1983, 1985, 1986, the Texas state constitution, and numerous state law tort clams against all the defendants listed above (collectively, the "Bastrop County Defendants").[3]  Shortly thereafter, each filed a motion to dismiss under Rule 12(b)(6).  *See* Clerk's Doc. Nos. 25-28.  On December 12, 2005, this Court ordered the litigation stayed pending the outcome of an administrative hearing before the State Office of Administrative Hearings ("SOAH").  *See* Clerk's Doc. No. 73.  The Court lifted the stay as to the

---

[2]After Plaintiff was arrested, and before he was indicted it came to light that J.D. had a history of lying and reports that he had made similar, apparently unsubstantiated, abuse allegations against family members.  Affidavit of Charles Frigerio, Exh. C at 95-96 (Clerk's Doc. No. 105-2). As is discussed below, this evidence was presented to the grand jury.  *Id.*

[3]Also named as defendants in Plaintiff's Complaint were: Carole Strayhorn, the Department of Family and Protective Services ("DFPS"), Darla Jean Shaw, Sherry Loyd, Dallas Kennedy, Susan Crozier, Jan Martin, Char Bateman, The Dallas Morning News, Robert Garrett, Bastrop County Sheriff's Office, and Bastrop County District Attorney's Office.  *See* Complaint (Clerk's Doc. No. 3).  The Bastrop County Sheriff's Office and the District Attorney's Office were dismissed as defendants in this cause with consent of the Plaintiff.  *See* Clerk's Doc. No. 56.  In a Report and Recommendation to the District Court, this Court recommended that the claims against Defendants Dallas Morning News and Robert Garrett be dismissed.  *See* Clerk's Doc. No. 57 (adopted by the District Court*, see* Clerk's Doc. No. 75).  Plaintiff appealed this ruling to the Fifth Circuit, *see* Clerk's Doc. No. 78, which dismissed the appeal for lack of jurisdiction.  *See* Clerk's Doc. No. 88. The remaining defendants (referred to collectively as the "State Defendants") have filed answers to Plaintiff's Complaint.  The claims against the State Defendants are not before the Court in this Report and Recommendation.

Bastrop County Defendants on April 19, 2006, but kept it in place as to the State Defendants. *See* Clerk's Doc. No. 86.[4]  After a hearing, the Court permitted Plaintiff limited discovery on the immunity issues, and set a schedule for additional briefing on the Bastrop County Defendants' Motions to Dismiss.  Defendants supplemented their motions to dismiss on August 14, 2006, and Plaintiff responded to the motions on October 2, 2006.  On October 12, 2006, the Court gave the parties notice that it intended to treat the motions to dismiss as summary judgment motions, given that both parties had submitted evidence in their supplemental briefing.  The Court allowed the parties 10 days from the date of the order to submit any additional evidence.  Plaintiff requested an extension of this date, and the Court extended the deadline until November 2, 2006, and Plaintiff filed hundreds of pages of depositions affidavits, and documentary evidence.[5]

---

[4]After the Court was advised that SOAH had issued a decision on July 13, 2006 – a decision that overturned the DFPS's determination that there was "reason to believe" that Plaintiff had sexually abused J.D., and explicitly stated "there is no evidence that Mr. Reynolds sexually abused [J.D.]," *see* Clerk's Doc. No. 104 – the Court requested the parties to file an advisory with the Court as to: (1) whether the stay should remain in place as to the State Defendants, and (2) whether SOAH's decision acted to moot any of Plaintiff's causes of action. In an order dated September 18, 2006, this Court lifted the remainder of the stay after the parties agreed that it should be lifted (and that none of Plaintiff's claims were mooted). *See* Clerk's Doc. No. 118.  It should be noted however, that the ALJ's opinion is apparently not yet final and any party aggrieved by the final decision has appellate remedies in the Travis County District Court and beyond.

[5]Despite the Court's warning in the order extending the deadline to November 2, 2006, that it would not extend the deadline further, much of this evidence was received after November 2, 2006.  For example, on November 3, 2006, Reynolds filed a dozen or more exhibits along with his affidavit.  On November 4, 2006, he filed an additional affidavit.  Thus, on November 6, 2006, the Court entered an order stating that while it would consider these late-filed exhibits, it would not accept any further filings from Plaintiff on the motions.  On November 8, 2006, the Court received yet another exhibit, followed by an advisory on November 9, 2006, in which the Plaintiff explained that he had mailed the November 8th filing prior to receiving the order of November 6, 2006.

## II.   STANDARD OF REVIEW

The Court, having apprised the parties that it has converted their motions to dismiss into motions for summary judgment, *see* Order filed October 12, 2006, utilizes the Rule 56 standard of review.  *See* FED. R. CIV. P. 56.  Rule 56 permits any party to a civil action to move for summary judgment upon a claim on which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665, 668 (5th Cir. 2006).  The motion strikes at the heart of the claim, in effect arguing that given the established and admitted facts "the moving party is entitled judgment as a matter of law." *Margolis v. Deason*, 464 F.3d 547, 550 (5th Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).  If the moving party meets the initial burden of showing there is no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).  In determining whether there is a genuine issue of material fact, all facts must be evaluated in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment.  *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  Summary judgment is appropriate if the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Id*.

## III.   PLAINTIFF'S COMPLAINT & DEFENDANTS' ARGUMENTS

Before proceeding to the legally substantive portion of the Report and Recommendation, the Court feels it best to delineate a roadmap of Plaintiff's claims against the Bastrop County

Defendants, and their arguments in response. In his Original Complaint – a 109-page, 652-paragraph behemoth – Plaintiff alleges what he purports to be 18 distinct causes of action, some applicable to the Bastrop County Defendants, others not. In his Supplemental Complaint – an additional 27 pages – Plaintiff adds five more causes of action.[6]

As best as the Court can determine, Plaintiff's causes of action against the Bastrop County Defendants are as follows.[7] Plaintiff's first claim under 42 U.S.C. § 1983 is that his arrest and detention violated his Fourteenth Amendment rights under the Equal Protection Clause, and his "liberty" as protected by the Due Process Clause of that same amendment. Apparently, these claims are only asserted against Defendants Hernandez and Suriano. *See* Brief in Opposition to Defendant Bastrop County, et al.'s Motions to Dismiss (hereinafter "Brief in Opposition") filed October 2, 2006 (Clerk's Doc. No. 126).[8] Plaintiff next alleges that Defendant Suriano's conduct in preparing and presenting the indictment – conduct allegedly ratified by all the other Bastrop County Defendants – violated § 1983 (the specific constitutional provisions violated being Equal Protection and Due Process Clauses). Plaintiff further alleges a civil conspiracy to interfere with his constitutional right to equal protection and due process of law; he brings this cause of action under 42 U.S.C. § 1985 against Defendant Suriano. *Id*. Plaintiff also brings a claim under 42 U.S.C. § 1986 – permitting a claim against those who neglect to prevent civil rights violations – against Defendant Suriano. *Id*.

---

[6]In that pleading, Plaintiff also attempted to add another party – the foreperson of the grand jury that indicted him. In a separate order, the Court denied this portion of his motion for leave. *See* Order filed September 8, 2006 (Clerk's Doc. No. 113).

[7]The Court uses the language found in Plaintiff's filings, or a close approximation thereof, to describe his claims.

[8]Unless otherwise specified, each cause of action is brought against every defendant.

In addition to these federal law claims, Plaintiff also brings a number of causes of action under Texas law. He first alleges violations of his rights under the Texas State Constitution. He also brings state law tort causes of action for gross negligence (against Defendants Holton and Suriano), *id.*, intentional infliction of emotional distress, malicious prosecution (against Defendants Goertz and Holton), and abuse of process. Solely against Defendant Suriano, Plaintiff brings a false arrest claim.[9]

In his Supplemental Complaint, Plaintiff alleges additional §1983 violations based on his contention that the indictment alleges a crime he did not commit, and that the indictment was forged. He brings this claim against Defendants Suriano and Holton. *Id*. He also alleges that because there was no presentation of *any* evidence – inculpatory or exculpatory – to a legally impaneled grand jury, a civil conspiracy under §1985 was perpetuated by the Defendants. This claim is also brought only against Defendants Suriano and Holton. *Id*. Plaintiff also reiterates his §1986 allegation against Defendants Goertz and Hernandez. *Id*. Finally, Plaintiff brings a state law defamation cause of action against Defendants Hernandez and Holton. *Id*.

Each defendant filed a separate motion to dismiss. Defendant Suriano, in his motion, asserts the defense of qualified immunity to Plaintiff's claims. Defendant Hernandez also asserts a qualified immunity defense, and contends that he had no personal involvement in the case. For their part, Defendants Goertz and Holton contend that they are absolutely immune because all their acts were performed in discharge of their duties as prosecutors. In their "supplementation" to their motions, all of the defendants argue that the issuance of an arrest warrant for Plaintiff by a magistrate and the

---

[9]Plaintiff also included in his Original Complaint a defamation cause of action against a Dallas newspaper and one of its reporters. These claims have been dismissed from the case. *See* Report and Recommendation filed November 17, 2005 (Clerk's Doc. No. 57), and Order adopting same (I can't find the Doc. No. for this).

grand jury's indictment of Plaintiff act as "intervening causes" in the chain of causation thus preventing them from being liable to Plaintiff on any of his claims.

## IV.    DISCUSSION

There has been an exceptional amount of filings in this case – three volumes plus and the case is only at the preliminary motion to dismiss stage.  Lest the Court, or the parties for that matter, lose sight of what is the *legal* issue presented by motions presently before it, the Court feels it best to quickly delineate the scope of its review.

The present issue is subtly simple.  The Bastrop County Defendants have essentially staked their claim on one legal argument: that the intervening acts of the magistrate in issuing the arrest warrant for Plaintiff, and the intervening acts of the grand jury in indicting Plaintiff act to insulate them from liability as to Plaintiff's § 1983 causes of action.  *See Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994).  That is all that is stake here. Thus, the only *facts* that will create a genuine issue preventing summary judgment are those that show that the Bastrop County Defendants, individually or collectively, tainted the probable cause affidavit or grand jury process by providing false or misleading information.  *See Shields*, 389 F.3d at 150.  To get at it another way, while all the filings in this case have given the Court an extensive factual background of the case, those facts that do not pertain to the accuracy of the probable cause affidavit or the propriety of the grand jury presentation and are not relevant to the Court's inquiry. With that in mind, the Court now turns to issues at hand.

## A.    Federal Civil Rights Causes of Action

Plaintiff's constitutional allegations alleged via § 1983 are: (1) unreasonable arrest and detention; (2) unreasonable investigation leading to the indictment; and (3) defective indictment (in

that it alleged a crime he did not commit, and was forged).   Section 1983 is the legal vehicle for individuals to vindicate their federal constitutional rights against persons acting under color of state law.  42 U.S.C. § 1983;  *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).  A claim for relief under 42 U.S.C. § 1983 must contain at least two elements.  Plaintiffs "are first bound to show that they have been deprived of a right 'secured by the Constitution and the laws' of the United States. They must secondly show that [the defendant] deprived them of this right acting 'under color of any statute' of the [state]."  *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978).

As a preliminary matter, the Court notes that Plaintiff couches his claims, at least in part, in the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff, the Court must assume, believes he is proceeding as a "class of one."  *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (allowing for a single plaintiff to proceed with an equal protection claim if she alleges "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").  However, Plaintiff has not produced any summary judgment evidence – only speculative allegations – that an illegitimate animus or ill-will motivated his intentionally different treatment from others similarly situated and that there was no rational basis for his prosecution.  *Id*.  In fact, Plaintiff's own factual allegations belie such treatment.  Plaintiff states that a fellow counselor at Woodside Trails, Robert Mueth – a person as similarly situated to Plaintiff as one could be – was also indicted on August 25, 2004, based on the allegations of a child at the camp.  *See* Brief in Opposition at 21, 23.  Further, Plaintiff does not explain how it was irrational for the Bastrop County Defendants, in their various capacities, to investigate Plaintiff after he was accused of sexual assault by a child he counseled.  By Plaintiff's own recitation of the factual background, then, he cannot proceed under an equal protection theory.

Plaintiff also claims that the Defendants' acts violated his liberty interest as protected by the Due Process Clause of the Fourteenth Amendment.  This claim appears to be a substantive due process claim.  The Supreme Court, in *Albright v. Oliver*, held that "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notions of substantive due process, must be the guide for analyzing these claims.'"  510 U.S. 266, 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  While the *Albright* Court dismissed the petitioner's claim because substantive due process was not the proper legal vehicle, it is not apparent that the same result must occur in this case.  In light of Plaintiff's *pro se* status, this Court must construe his complaint liberally.  *See Nerren v. Livingston Police Dept.*, 86 F.3d 469, 472 (5th Cir. 1996).  Therefore, the Court will construe Plaintiff's § 1983 claims – claims that touch upon alleged pretrial constitutional violations – as Fourth Amendment violations because that Amendment's net catches those constitutional violations that occur pre-trial.  *Castellano v. Fragozo*, 352 F.3d 939, 959 (5th Cir. 2003) ("the umbrella of the Fourth Amendment, broad and powerful as it is, casts its protection solely over the pretrial events of a prosecution.").

However, even with this conversion into legally cognizable claims, Plaintiff must still contend with Fifth Circuit precedent that once facts supporting an arrest or indictment are placed before an independent intermediary, such as a magistrate or a grand jury, the intermediary's decision breaks the chain of causation for these constitutional violations.  *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994).  Therefore, unless Plaintiff can affirmatively show – that is, in this context, raise a genuine issue of material fact – that "the deliberations of that intermediary were in some way tainted by the actions of the defendants,"

*Shields*, 389 F.3d at 150, all of his § 1983 claims fail because both a magistrate and grand jury found probable cause for his arrest and indictment, respectively.

       1.     **Plaintiff's Claim of Unreasonable Arrest and Detention.**[10]

Insofar as his arrest is concerned, Plaintiff's arguments are many, and the Court will try to give each its due. First, Plaintiff contends that the affidavit supporting the arrest warrant contained materially false statements and omissions. Specifically, in his Brief in Opposition, Plaintiff identifies the following alleged mistakes and omissions: (1) misstating Plaintiff's birthday as 4/12/68 instead of 4/21/68; (2) the Woodside Trails cause number is confused with the CPS Intake number; (3) the affidavit's date is July 13, 2003 instead of July 13, 2004; and (4) the affidavit states that J.D. is a "junior (Jr.)" when he is not. None of these alleged inaccuracies tainted the probable cause determination. In *Taylor*, the Fifth Circuit emphasized that a plaintiff can only establish an unbroken chain of causation when the defendant withholds *relevant* information. 36 F.3d 453, 457 (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). Quite simply, none of these mistatements or allegedly withheld information is relevant to a magistrate's probable cause determination.

Next, Plaintiff makes much of the fact that Defendant Suriano's probable cause affidavit asserted that "[J.D.] stated that [Plaintiff] also came into [J.D.'s] shelter, and partially climbed into bed with him." *See* Affidavit of Charles Frigerio, Exh. A. Plaintiff claims that in his forensic interview J.D. only said that "he was half-way on my bed / he's hanging half-way off my bed / it was like he was kind of like sitting down like that, leaning like that." *See* Plaintiff's Supplemental

---

[10]These claims are only raised against Defendants Suriano and Hernandez, and the prosecutors are not named as defendants on the unreasonable arrest claims.

11

Response, at 14 (Clerk's Doc. No. 146).[11]  Therefore, Suriano's summary of J.D.'s interview was, according to Plaintiff, materially misleading to the magistrate.  The Court disagrees.  Defendant Suriano's description is a plausible way of summarizing, in a probable cause affidavit, J.D.'s testimony.  There is little if any difference between "partially climbing into bed" and being "half-way on [a] bed . . . kind of like sitting down like that, leaning like that."  More importantly, Plaintiff's argument is really a quibble around the edges, because even if Suriano's affidavit does not contain a verbatim account of J.D.'s statement, it is irrelevant to whether there was probable cause to support the affidavit unless the summary was misleading.  And as just noted, the summary description of J.D.'s statement is not misleading.[12]

Finally, Plaintiff claims that the "arrest warrant lacked probable cause because information obtained from the alleged victim in this case was unreliable based on past allegations of abuse he had made, of which Defendant Suriano was or should have been aware."  *See* Original Complaint at 63. This appears to be a claim that Suriano omitted material information from his affidavit (*i.e.*, information about previous, allegedly unreliable, allegations J.D. had made).  In this regard,

----

[11]Plaintiff submitted tapes of the interviews after the deadline set by the Court, and the Court received the tapes after it stated that it would accept no more summary judgment evidence.  *See* Clerk's Doc. No. 163.  However, because Plaintiff apprised the Court that the tapes had been mailed before he knew of the Order, the Court will accept them as part of the summary judgment record. *See* Plaintiff's Advisory to the Court (Clerk's Doc. No. 165).

[12]Plaintiff also complains that Defendant Suriano made up the date alleged in the probable cause affidavit (April 1, 2004) because Suriano knew that it was impossible for Plaintiff to have sexually assaulted J.D. within the time frame that J.D. alleged he was abused.  However, it is clear from Suriano's deposition (that Plaintiff took) that he was basing his approximation of the date – "on or about April 1, 2004" – on the timeline J.D. had laid out.  *See* Deposition of Defendant Suriano, at pp. 67-75 (Clerk's Doc. No. 131-2), attached to Affidavit of Jackie Dewayne Reynolds, (Clerk's Doc. No. 131-1) (stating that he was relying on the closest day the victim could recall). Here again, Plaintiff's argument devolves in conspiratorial conjecture, *see* Plaintiff's Supplemental Response, at pp. 15-18 (Clerk's Doc. No. 146), rather than competent summary judgment evidence.

Plaintiff's Response goes on a nine-page excursion, the point of which seems to be that Defendant Suriano had a duty to perform a much more thorough investigation of J.D.'s claims because Suriano knew or should have known that it was likely that J.D. was fabricating his accusations against Plaintiff. The evidence of this that Plaintiff points to is: (1) portions of the interview with J.D. where he accused Plaintiff of assaulting him; (2) Defendant Suriano's failure to interview certain possible witnesses; and (3) Defendant Suriano's knowledge of J.D.'s propensity to lie given that he had investigated a sexual assault "outcry" involving J.D. before.

It is hard to see what Plaintiff's point is when he directs the Court's attention to J.D.'s statement made in the interview that "I can't really count how many times [Plaintiff forced J.D. to perform oral sex on him]. It was probably a couple of times. A few or a couple or something like that." This is not a statement which, when taken in the context of the entire interview, significantly undermines the victim's credibility, particularly given that the alleged victim was 13 years old. Equally unpersuasive are Plaintiff's other two points. It is hard to argue with the claim that Defendant Suriano did not conduct a completely thorough investigation. But a less-than-thorough investigation is not necessarily an unconstitutional one. "A defendant challenging an affidavit must show that the affidavit, supplemented by the omissions, would not be sufficient to support a finding of probable cause." *United States v. Brown*, 298 F.3d 392, 413 (5th Cir. 2002) (talking about what is necessary for a defendant to show before his is entitled to a *Franks* hearing). Plaintiff thinks it dispositive that Defendant Suriano had investigated a previous case involving J.D. It is not. In that case, as Plaintiff outlines it in his Response, J.D. and three other boys were involved in "sexually acting out" and Suriano's role was to determine whether the facility or staff had failed to adequately supervise the children involved. *See* Plaintiff's Supplemental Response at 22. Moreover, as

13

Defendant Suriano testified in his deposition, J.D. was classified as a "victim" in that investigation. *Id*. Therefore, even if Defendant Suriano had included this information in his probable cause affidavit, probable cause would have still existed (indeed, one could quite plausibly argue that the probable cause finding would have been bolstered).[13]

In any event, what is most damning to Plaintiff's allegations is that J.D. recanted *after* the arrest warrant was issued (and therefore after Suriano's probable cause affidavit was prepared). Plaintiff contends that this is not the case and offers a conspiratorial explanation for the fact that Defendant Suriano did in fact know of the recantation prior to August 16, 2005. Again, Plaintiff misconceives the nature of summary judgment testimony. Pure conjecture is not enough to stave off summary judgment (if this were so, every non-movant could defeat summary judgment simply by alleging the factual converse of each material fact) and this is all Plaintiff has offered.

In summary, the undisputed evidence demonstrates that an independent intermediary reviewed a probable cause affidavit before issuing the warrant that led to Reynold's arrest. Plaintiff

---

[13]Plaintiff has also submitted the affidavits of Betty Lou Gaines (former executive director of Woodside Trails), Sam Z. Damon (an attorney who handled part of Plaintiff's case after he was indicted), and Rhonda Caffee (the Woodside Trails Clinical Director). None of these affidavits, however, contain any evidence which is relevant to the motions for summary judgment. Gaines' affidavit rehashes much of Plaintiff's factual claims. *See* Affidavit of Betty Lou Gaines (Clerk's Doc. No. 162) (stating, for example, (1) that she is familiar with J.D.'s treatment history; (2) the layout of the camp where J.D. alleged the abuse to have taken place; (3) Defendant Suriano was involved in investigating a case in which J.D. was a victim of sexual assault; (4) that *after* Plaintiff was arrested and *after* Plaintiff was indicted she told Defendant Suriano that there existed exculpatory information regarding the charges against Plaintiff). Damon's affidavit likewise refers to events that took place on or after September 20, 2004; that is, events that took place *after* Plaintiff's arrest and indictment. Caffee's affidavit talks about, for example, J.D.'s treatment history, the layout of Woodside Trails, J.D.'s history of false sexual abuse allegations, and that Defendant Suriano had investigated an incident in 2002 involving J.D. being the alleged victim of sexual abuse by three older boys (although Caffee represents that J.D. was the instigator of incident). While helpful in filling out the factual background of the events, the affidavits do not help Plaintiff legally because they do not demonstrate that the material submitted to the magistrate and grand jury, respectively, was false or contained material omissions.

14

has failed to demonstrate the existence of any issue of material fact suggesting that the contents of that affidavit were materially false, or that the affidavit omitted material information.  Because there is no summary judgment evidence that the affidavit was "tainted" by the actions of the Defendants, summary judgment is required with regard to the § 1983 claims involving Plaintiff's arrest.  *Shields*, 389 F.3d at 150; *Taylor*, 36 F.3d at 456.

### 2.    Plaintiff's Claim of Unreasonable Investigation and Defective Indictment.

Insofar as the indictment is concerned, Plaintiff's claim is hard to pin down, but it seems to be this: (1) there was no consideration given to the exculpatory evidence, and that this resulted in it not be given to the grand jury, *see* Brief in Opposition at 8 (Clerk's Doc. No. 126-1); (2) Plaintiff was indicted for a crime J.D. did not accuse him of, *see id.* at 2-9; and (3) the indictment was forged, *see id.* at 10-14.

Plaintiff's first argument regarding the indictment is that Suriano and the prosecutors had not given due consideration to the exculpatory evidence in their possession, and they therefore  withheld the victim's recantation from the grand jury.  *See* Original Complaint at 65-70; Brief in Opposition at 8 (Clerk's Doc. No. 126-1).  The summary judgment evidence, however, is that the recantation, along with the other exculpatory evidence, was in fact presented to the grand jury.  *See* Affidavit of Charles Frigerio, Exh. C (page 110 of the deposition of Suriano).  Suriano testified that he told the grand jury about J.D.'s past (apparently false) allegations of sexual abuse against family members, *id*. at 96, about J.D.'s history of lying, *id*. at 95, about J.D.'s history of "sexually acting out" with other boys, specifically the case that Suriano had investigated involving J.D. two years prior, *id*. at 98, and that J.D. had made the allegation that the abuse occurred at Woodside Trails, and not when Plaintiff had taken J.D. "off-campus," *id*. at 97.   There is no evidence controverting any of Surinao's

deposition testimony.  Moreover, under neither federal nor Texas law, the prosecution has no duty

to present exculpatory evidence to a grand jury.  *United States v. Williams*, 504 U.S. 36 (1992); *In*

*re Grand Jury Proceedings 198.GJ.20*, 129 S.W.3d 140 (Tex. App. – San Antonio, 2003) (rev.

denied).  Regardless, as noted, the undisputed evidence demonstrates that the grand jury was aware

of the recantation (and other exculpatory evidence) before it voted to indict the Plaintiff.

　　　　Plaintiff also claims that the indictment was forged.  The summary judgment record contains

a signed, notarized copy of the indictment.  *See* Plaintiff's Brief in Support of Deposing Grand Jury

Members, Exh. P-4 (Clerk's Doc. No. 98).  Plaintiff has presented nothing in the way of summary

judgment evidence to demonstrate that the indictment naming him was forged, and was not in fact

signed by the grand jury foreman.  Rather, he relies entirely on wild speculation of a conspiracy

against him regarding this claim.[14]  Such allegations cannot defeat a summary judgment motion.

*See Shields*, 389 F.3d at 150 (holding that conclusory allegations are insufficient to create a fact issue

to warrant denial of summary judgment).

　　　　As noted earlier, *see supra* note 11, Plaintiff belatedly submitted the tapes of the interviews

in which J.D. made both his initial outcry and his recantation.  Because the recantation was made

prior to Plaintiff's indictment, Plaintiff argues that Defendant Suriano should not have proceeded

with the indictment.[15]  However, as Defendant Suriano testified in his deposition, he felt that

---

[14]For example, Plaintiff contends that the Bastrop County District Attorneys Office "just wrote out the charges, had a formal indictment typed up (with the witness field to be filled in later) and handed it to the 'foreman' Dock Johnson, for his signature.  *(Please note the similarities in the handwriting contained in the formal indictment and handwritten indictment, believed to be Defendant Holton's handwriting)*."  *See* Plaintiff's Supplemental Response, at p. 12 (Clerk's Doc. No. 146) (emphasis in original).

[15]Plaintiff also alleges that Defendants Suriano and Jean Shaw actually knew of the recantation *prior* to the date of the actual recantation.  *See* Plaintiff's Supplemental Response, at pp. 5-10 (Clerk's Doc. No. 146).  Plaintiff offers no evidence in support of this, merely conjecture.  *See*

because, in his experience, it was not unusual for younger children to recant their "outcrys," he was still persuaded that the initial accusation made by J.D. was true.  *See* Affidavit of Charles Frigerio, Exh. C (page 116 of Suriano Deposition).  The Court has listened to the tapes, and they present no evidence that Defendant Suriano tainted the grand jury process.  Further, Plaintiff has failed to identify what right was violated when Suriano and the prosecution elected to present the case to a grand jury.  If there were such a right, many a sexual abuse case would go uncharged, as many such victims falsely recant their allegations, out of fear of their abusers.  Plaintiff cites no cases, nor has the Court found any, holding that a prosecutor violates an accused's constitutional rights by presenting a case to a grand jury where there are disputes regarding the accuser's claims.

Finally, Plaintiff complains that he was charged in the indictment with two counts of aggravated sexual assault of a child, when he was only accused of one of the two charged crimes. *See* Plaintiff's First Amended Complaint, Exh. D. (Clerk's Doc. No. 108) (attached to Plaintiff's Motion for Leave to Amend Complaint with Respect to the Bastrop County Defendants).[16]  This argument misses the point of the Defendant's summary judgment argument.  Defendants claim that the grand jury's independent decision to return an indictment insulates them from liability unless the Plaintiff can demonstrate that the Defendants in some way tainted the grand jury's deliberations.

_____

*e.g., id.* at p.6 ("Furthermore, August 16, 2004 [the date of J.D.'s recantation] was [Jean] Shaw's first day after a week-long vacation (proof of which I am again prevented from providing because of the Confidentiality Agreement, Exhibit A), and I find it highly implausible that this interview [with J.D.] would occur her first full day back at work given the overwhelming likelihood that she would be well behind on a great deal of bureaucratic paperwork.").  This sort of speculation cannot defeat summary judgment.

[16]Count One of the indictment against Plaintiff alleges that Plaintiff forced  J.D. to perform fellatio on him.  *Id*.  The second count accuses Plaintiff of performing fellatio on J.D.  *Id*.  Plaintiff's complaint is that there is no evidence that J.D. ever made any statements or allegations that would support the second count of the indictment.

The Plaintiff's argument ignores the fact that it was the *grand jury*, and not any of the Defendants, who indicted him.   Plaintiff, as this Court has already ruled in a previous Order, has no cause of action against the grand jury collectively, or grand jurors individually.   *See* Order filed September 8, 2006 (Clerk's Doc. No. 113) (citing, for example, *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)).   Assuming for the sake of argument that Count 2 of the indictment was an error, and that no evidence was submitted to the grand jury to support that charge, Plaintiff has failed to offer any summary judgment evidence  that such error is attributable to the Defendants.   Indeed, as is clear from Suriano's deposition testimony, he had never seen the indictment until the day Plaintiff took his deposition.   Affidvait of Charles Frigerio, Exh. C, at p. 133 (Defendant Suriano's Deposition). Defendant Suriano testified that he made his grand jury presentation based on what J.D. had told him.   *Id*. at 132-33.   Therefore, the summary judgment evidence fails to demonstrate any evidence that would make Suriano responsible for an error, if any, in the indictment.

The only remaining potentially responsible party for this apparent mistake (other than the grand jury), is the prosecutor. In this regard, Plaintiff accuses Defendant Holton of being involved in the faulty indictment.  Defendant Holton, however, is protected by absolute immunity. Under the doctrine of prosecutorial immunity, a prosecutor is absolutely immune in a civil rights lawsuit for any action taken in connection with a judicial proceeding.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Burns v. Reed*, 500 U.S. 478, 487-92 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 427-31 (1976).   "Acts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (quoting *Buckley v. Fitzsimmons* 113 S.Ct. at 2615).   Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process.

*See Boyd*, 31 F.3d at 285; *Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993). Thus, a prosecutor is immune from civil rights liability for actions taken in connection with a judicial proceeding, even if taken maliciously. *See Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991); *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987).

Not all prosecutorial functions are protected. In *Imbler*, the Court declared that absolute immunity applied to a prosecutor's actions in "initiating a prosecution and in presenting the State's case." *Imbler*, 424 U.S. at 431. This immunity protected the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence. Absolute immunity does not apply to investigative or administrative acts performed by prosecutors. *Burns*, 500 U.S. at 493.

Plaintiff alleges such acts as indicting him without probable cause and indicting him for a crime he did not commit are investigatory and "fall outside the judicial process." *See* Brief in Opposition at 5 (Clerk's Doc. No. 126-1). Plaintiff is mistaken. A decision to prosecute an individual by presenting the case to a grand jury is an advocatory function, not an investigatory one. *See e.g.*, *Burns v. Reed*, 500 U.S. 478, 490 (1991) (stating in dicta that the Court had previously affirmed court of appeals decision where prosecutor's conduct before grand jury was extended common-law immunity); *Kerr v. Lyford*, 171 F.3d 330, 337 (5th Cir. 1999) (*overruled on other grounds*); *Moore v. Valder*, 65 F.3d 189, 214 (D.C. Cir. 1995); *Morrison v. City of Baton Rouge*, 761 F.2d 242, 247-48 (5th Cir. 1985). Thus, it is beyond dispute that the challenged actions taken by Holton are protected by prosecutorial immunity, as they all related to the initiation of the prosecution through the presentation to the grand jury. Because the prosecutors are protected by absolute immunity, Plaintiff's claims against them should be dismissed.

In short, Plaintiff has not proffered any summary judgment evidence that the grand jury's deliberations were tainted by the Defendants – the only information Plaintiff or Defendants have

offered about what happened during the grand jury proceedings is what Defendant Suriano testified to in his deposition. Defendant Suriano testified that he put before the grand jury all the evidence he had acquired during his investigations, including exculpatory evidence, and that the grand jury chose to indict Plaintiff for the two counts contained in the indictment. *See* Affidavit of Charles Frigerio, Exh. C.(p. 110 of Defendant Suriano's deposition). Given that the facts supporting his arrest and indictment were placed before independent intermediaries – the magistrate and grand jury, both of which found probable cause – and Plaintiff has produced no summary judgment evidence of taint, the Bastrop County Defendants are insulated from § 1983 liability. *Shields v. Twiss*, 389 F.3d 142, 150. Furthermore, because Plaintiff's § 1983 claims fail, there can be, by definition, no conspiracy to violate his civil rights under § 1985, nor a failure to prevent such conspiracy under § 1986. *See e.g., Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir.1989). Therefore, the Court recommends that Defendant's motions as to Plaintiff's §§ 1983, 1985, and 1986 claims be granted.

**B.      State Law Claims**

Other than a passing wave at the argument in their motions, none of the Bastrop County Defendants have submitted any evidence or argument relating to their claim of official immunity on Plaintiff's many state law claims.[17] Given that official immunity is an affirmative defense on which the defendants have the burden of proof, *Morgan v. City of Alvin*, 175 S.W.3d 408 (Tex. App. – Houston [1st Dist.] 2004, no pet. h.), the Bastrop County Defendants have failed to carry their

---

[17]The only reference in the motions to the state law claims – if it can be called that – is the bare mention of the term "official immunity." As noted in the text, the motions never once discuss the state law claims, nor do they offer any evidence to demonstrate that Defendants have met the elements of official immunity as to those claims, those elements being: (1) a government employee performing a discretionary duty in (2) good faith; and (3) acting within the scope of her authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (1994).

summary judgment burden on this issue.  Therefore the Court recommends denying Defendants'
motions as to Plaintiff's state law claims.

## IV.  CONCLUSION

From the information available to the Court at this stage of the proceedings, it would appear
that the arrest and subsequent indictment of Plaintiff was based on a sub-par police investigation,
and prosecutorial work that was less than stellar.  One can certainly sympathize with Plaintiff's
obvious anger at these circumstances.  However, much of the evidence submitted by the Plaintiff in
response to the Bastrop County Defendants' motions went well beyond the scope of those motions,
and seems to have been directed primarily at demonstrating that Plaintiff was in fact innocent of the
charges made against him.  As he has noted, when all of the evidence was presented to an
administrative law judge in the state hearings, that judge concluded that "there is no evidence that
Mr. Reynolds sexually abused [J.D.]."  *See* Clerk's Doc. No. 104.  The question of Mr. Reynolds
innocence as to the sexual assault charge, however, is not what is before the Court on the Bastrop
County Defendants' motions.  Rather, as stated at the outset, the issue on which those motions was
narrowly focused was whether the Bastrop County Defendants took any actions to taint the arrest or
indictment process.

Thus, while the investigators' and prosecutors' actions may have been less than what one
would hope a diligent police officer or prosecutor would do in such cases, the Fourth Amendment
to the United States Constitution does not guarantee that the state, through its police officers, will
always meet the standard one would expect.  Rather, one only has a Fourth Amendment cause of
action against the state when the state's actors have, by misleading statements or omissions, so
tainted a magistrate's or grand jury's actions that a court can say that it is the state – not the
magistrate or grand jury – that is responsible for the decision to arrest or indict the person.  In this

case, Plaintiff has failed to find evidence that the Bastrop County Defendants were anything more than negligent in investigating the Defendant and requesting that he be indicted.  And while it may well be unfair for Plaintiff to have suffered the significant effects of that negligence, not all of the "unfairnesses" of life create a legal claim.  To be sure, Plaintiff's case is not finished – there are more claims against more defendants – but hopefully Plaintiff will keep the above in mind in his future actions in prosecuting this lawsuit.

## V.  RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **GRANT IN PART,** and **DENY IN PART** Defendant Goertz's, Holton's, Suriano's, and Hernandez's converted motions for summary judgment.  *See* Clerk's Doc. Nos. 26, 27, 28, 105; *see also* Order Converting Motions to Dismiss into Motion for Summary Judgment (Clerk's Doc. No. 129).  The Magistrate Court **RECOMMENDS** that the motions be **GRANTED** as to Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986, and **DENIED** as to Plaintiff's state law claims.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of November, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

23