IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JACKIE DEWAYNE REYNOLDS | § | |
| | § | |
| v. | § | A-05-CA-638 LY |
| | § | |
| CAROLE STRAYHORN, et al. | § | |

**SECOND INTERIM REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Strayhorn's Rule 12(c) Motion for Judgment on the Pleadings filed November 1, 2006 (Clerk's Doc. No. 141). The District Court referred all pending motions to the undersigned Magistrate Judge for resolution or report and recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  FACTS & PROCEDURAL HISTORY

The following summary of the relevant facts is based on Plaintiff's Original Complaint. At this stage of the proceedings, the Court accepts all well-pleaded facts therein as true, viewing them in the light most favorable to the plaintiff. *See Memon v. Allied Domecq QSR*, 385 F.3d 871, 872–73 (5th Cir. 2004).[1] The Court has recounted these allegations in prior orders. In short, Plaintiff was a counselor at Woodside Trails, a therapeutic camp for boys ranging in age from 9 to 17, many of whom were placed there for sex crimes. Plaintiff worked closely with one of the boys, J.D., and developed a bond with him. Shortly after Plaintiff stopped working with him, J.D. accused Plaintiff

---

[1]This suit was filed on August 23, 2005. Plaintiff is proceeding *pro se*.

of sexually abusing him. Plaintiff was arrested on July 22, 2004, shortly after the allegation was made. The charge and arrest came in the midst of reports and rumors that these types of incidents were not uncommon at Woodside Trails, and the Texas Department of Family and Protective Services[2] (TDFPS) began an investigation into the camp. On August 13, 2004, TDFPS made the decision to remove all the children placed there by it from Woodside Trails. On August 16, 2004, J.D. recanted his claim of sexual abuse by Plaintiff, however, the Bastrop County District Attorney's office decided to move forward with the case, and, on August 25, 2004, a grand jury indicted Plaintiff for aggravated sexual assault of a child. Subsequently, the Bastrop County District Attorney's Office dismissed the indictment against Reynolds.

The end result of all this – Plaintiff's arrest and indictment for crimes he claims he did not commit (a claim a state administrative law judge agreed with[3]) – is, according to Plaintiff, in large part the fault of Carole Strayhorn, the Texas State Comptroller. The gravamen of Plaintiff's complaint is essentially that Strayhorn placed political pressure on TDFPS to conduct a witch-hunt type investigation, and placed pressure on Bastrop County law enforcement officers, all of which resulted in the charges against him: "Defendant DFPS' finding against me and against the other counselor, the findings against the camp, and the subsequent indictment and malicious prosecutions were the direct result and consequence of the reckless and wanton abuse of power and authority by Defendant Strayhorn and her office of the Texas State Comptroller of Public Accounts, while using her office to pursue political gains." See Plaintiff's Original Complaint, at p. 13. It is plain from the

---

[2]Also a defendant in this litigation.

[3]The State Office of Administrative Hearings issued a decision on July 13, 2006 that overturned TDFPS's determination that there was "reason to believe" that Plaintiff had sexually abused J.D., and explicitly stated "there is no evidence that Mr. Reynolds sexually abused [J.D.]," see Clerk's Doc. No. 104

tome of Reynold's response to Strayhorn's motion that he considers her the primary cause for all of the damages he suffered when he was arrested and indicted.

One of the tools, so to speak, that Plaintiff alleges Strayhorn used to accomplish her nefarious goal was her report *Forgotten Children: A Special Report on the Texas Foster Care System*. According to him it "makes reckless and exaggerated claims about the living conditions at Woodside Trails and criticizes Defendant TDFPS for placing children there." *Id*. at 11. Plaintiff also alleges that after a local TV news anchor did a glowing human interest piece on Woodside Trails, Strayhorn grew "furious and vowed her office would shut Woodside Trails down." *Id*. at 14. According to Plaintiff, Strayhorn (or members of her staff): (1) called an abuse hotline and made false allegations; (2) demanded TDFPS account for conclusions of its investigations against Woodside Trails; (3) contacted the Bastrop County law enforcement officials seeking negative information about Woodside Trails; (4) had a goal of closing Woodside Trails; and (5) pressured TDFPS to rule against Woodside Trails in its investigation.

As a result of all these events (the investigation of Woodside Trails, the *Forgotten Children* report, Plaintiff's arrest and indictment) Plaintiff filed suit against – among (many) others – Strayhorn, alleging federal and state constitutional claims, and state law tort causes of action.

## II. STANDARD OF REVIEW

The Court reviews a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion for dismissal,[4] by "asking whether it appears certain that the plaintiff cannot prove any set of facts . . . which would entitle her to relief." *Barnett-Nelson Louisiana Bd. of Regents*, 431 F.3d 448, 450 n.2 (5th Cir. 2005). A complaint "should not be dismissed for failure to state a claim unless it

---

[4]Strayhorn had already filed an Answer to Plaintiff's Original Complaint, thus precluding a Rule 12(b)(6) motion.

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Smith v. Waste Management, Inc.*, 407 F.3d 381, 383 (5th Cir. 2005) (laying out standard of review for 12(b)(6) motion). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5 th Cir. 2002) (laying out standard for 12(c) motion). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal. *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001).

### III.  ANALYSIS

Plaintiff's claims against Strayhorn are: (1) Texas state constitutional violations; (2) § 1983 civil rights violations (relating to alleged violations of substantive due process and equal protection); (3) intentional infliction of emotional distress (IIED); (4) gross negligence; and (5) abuse of process. Each is taken up in turn.

**A.     State Constitutional Claims**

When a plaintiff sues under provisions of the Texas constitution, money damages are not available. *See City of Beaumont v.Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995) (no indication the Constitution "was intended to provide an implied private right of action for damages for the violation of constitutional rights"); *see also Haynes v. City of Beaumont*, 35 S.W.3d 166, 182 (Tex. App. – Texarkana 2000, no pet.); and *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 400-01 (Tex.

App. – Houston [14th Dist.] 1999, no pet.). Plaintiff is suing Strayhorn only for money damages.[5] *See* Plaintiff's Original Complaint, at p. 109. Therefore, his Texas state constitutional claims are not cognizable under Texas law and the Court recommends that these claims should be dismissed.

**B.  Federal Constitutional Claims**

Plaintiff alleges § 1983 constitutional violations of his Fourteenth Amendment substantive due process and equal protection rights. As an initial matter, Plaintiff's factual allegations, insofar as they concern Strayhorn's actions vis-a-vis Woodside Trails, cannot serve to support any of his claims against Strayhorn because Plaintiff does not have the requisite property interest in Woodside Trails. *See e.g., Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Plaintiff does not dispute this. *See* Plaintiff's Response in Opposition to Defendant Strayhorn's Motion for Judgment on the Pleadings (Clerk's Doc. No. 166), at p. 2 ("I have no property interest in [Woodside Trails]" and "I do NOT have legal standing to make any such claim on behalf of Woodside Trails"). Plaintiff maintains, however, that Strayhorn's "campaign against Woodside Trails was the proximate cause of my constitutional deprivations and that said deprivations were foreseeable." *Id*.

However, as Strayhorn points put in her Reply, this Court recently issued a report and recommendation finding that the Bastop County law enforcement officers and the Bastrop County district attorneys involved in Plaintiff's arrest and indictment were not liable for Plaintiff's arrest and indictment. This finding was based on a magistrate's finding of probable cause and a grand jury's indictment, each of which acted as intervening causes insulating the Bastrop County defendants from §1983 liability. *See* Interim Report and Recommendation filed November 15, 2006 (Clerk's Doc.

---

[5]As Strayhorn points out, Plaintiff asks for preliminary injunctive relief to prohibit TDFPS from continuing to harass him. *See* Plaintiff's Original Complaint, at p. 108. TDFPS, and therefore, that request (which, in any event, is moot at this point) is not before the Court.

No. 169) (citing *Shield v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)). Given this, the Court finds that Plaintiff cannot as a matter of law state a § 1983 claim against Strayhorn because she is at least one causational link removed from the events Reynolds complains of – his arrest and indictment. Put differently, it cannot be the case that those defendants who were directly responsible for Plaintiff's arrest and indictment are shielded from liability, while a defendant who had *no* direct involvement is subject to liability for the same conduct. Accordingly, the Court recommends that Plaintiff's § 1983 cause of action against Strayhorn be dismissed.

**C.     Intentional Inflication of Emotional Distress**

Plaintiff also alleges that Strayhorn's conduct during the course of the investigation inflicted emotional distress on him. The Texas Supreme Court has adopted the Restatement (Second) of Torts' formulation of the IIED tort: "The Restatement elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993).

Strayhorn contends that, as a matter of law, the behavior that Plaintiff accuses her of – orchestrating a canned investigation of Woodside Trails in order to shut it down and pressuring the Bastrop County District Attorney and Sheriff's Department to follow up on JD's accusation – does not rise to the level of "extreme and outrageous" behavior. Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).

6

The Court agrees with Strayhorn that even taking all of Plaintiff's accusations as true, her conduct did not "go beyond all possible bounds of decency," nor could it classified as "atrocious." While it is true that the Fifth Circuit has held that manufacturing a crime so as put a person in fear of criminal charges is extreme and outrageous conduct, *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989) (holding conduct extreme and outrageous where supervisor with a vendetta against employee placed employer checks in her purse so as to make her look like a thief), Plaintiff's allegations are not that Strayhorn manufactured evidence to falsely accuse Plaintiff of a crime. Morevoer, even if Strayhorn did exert political pressure on Bastrop County law enforcement officials to investigate charges of sexual abuse, those officials were under a legal duty to do that anyway. In any case, even if the Bastrop County law enforcement community had not been inclined to take seriously allegations of the sexual abuse of a child, the Court finds that Strayhorn's conduct – allegedly pressuring other government agencies and officials to shut down a foster care camp and prosecute those counselors that had been accused of sexual abuse – as a matter of law, does not arise to the level of extreme and outrageous behavior. *See Halbert v. City of Sherman, Tex*., 33 F.3d 526, 529 (5 th Cir. 1994) (holding that calling police and making false reports of drug use and alcohol abuse is not sufficiently outrageous conduct to warrant recovery of damages on IIED grounds); *Diamond Shamrock Refining & Marketing Co. v. Mendez*, 844 S.W.2d 198, (Tex. 1992) (falsely publicizing that the plaintiff had been fired for stealing company property is not sufficiently outrageous conduct). Accordingly, the Court recommends that this claim be dismissed.

**D.    Gross Negligence**

Plaintiff also alleges that Strayhorn was grossly negligent when she influenced the investigation of Woodside Trails and pressured the Bastrop County law enforcement community to

take seriously the accusations of sexual abuse resulting in his subsequent arrest and indictment. Gross negligence consists of two elements: (1) the actor has actual, subjective awareness of the risk involved but nonetheless proceeds with conscious indifference to the rights and safety or welfare of others; and (2) the conduct at issue is an act or omission involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others. *Tarrant County v. Morales*, --- S.W.3d ---, 2006 WL 3114444, at *2 (Tex. App. – Fort Worth, Nov. 2, 2006, no pet. h.). Strayhorn argues that "Plaintiff fails to plead a legally recognized duty, which is prerequisite to all tort liability." *See* Strayhorn's Rule 12(c) Motion (Clerk's Doc. No. 141). This is true; whether a duty exists is the threshold inquiry, *see Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983), so if Strayhorn owed no duty to Plaintiff, his claim must fail.

Texas courts have emphasized that a number of factors must be considered in determining whether a duty exists. It is generally agreed that the most important of these factors is foreseeability *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). The precise nature of the harm actually incurred need not be foreseeable, only its general nature. *Berry Property Management v. Bliskey*, 850 S.W.2d 644, 654 (Tex. App.– Corpus Christi 1993, dis. agr.). Other factors include the degree of risk of injury to the plaintiff, the probability of injury balanced against the social utility of the actor's conduct, the magnitude of the burden that would be imposed if a duty to guard against or avoid the activity is imposed, and the consequences of placing that burden on the defendant. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994) ; *see Central Power & Light Co. v. Romero*, 948 S.W.2d 764, 767 (Tex. App.– San Antonio 1996, den.) (power company owes no duty to employee of customer to inspect customer's equipment and wiring before supplying electricity because social utility of providing electricity, magnitude of burden of duty to inspect, and costs to general public of imposing

duty outweigh factors of risk, foreseeability, and likelihood of injury to others). In one case, for example, the Texas Supreme Court held that a stockbroker has no duty to ascertain an elderly person's mental capacity before assisting the person with a stock transfer. The Court reasoned that although the risk that an elderly person may not appreciate the significance of a stock transaction is neither improbable nor unforeseeable, it must be balanced against the utility of affording elderly persons the same services available without question to younger people and the burden of requiring stockbrokers, who have no expertise in this area, to assess their clients' mental capacity. *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544-545 (Tex. 1998).

While it is arguably not improbable that a person may be wrongly accused when an official places pressures on other government agencies to vigorously investigate claims of sexual abuse, this should be balanced against the probability of injury to Plaintiff, the social utility of Strayhorn using her office to investigate what is certainly a matter of public concern (sexual abuse of foster children), the heavy burden that would be placed on state actors such as Strayhorn to guard against such incidents in fulfilling her duties as a government official, and the consequences of placing such a burden on Strayhorn.[6]

The social utility of a government official using her office to highlight concerns of public importance weighs heavily against holding that Strayhorn owed a duty to Plaintiff. *See Bird*, 868 S.W.2d at 769. Furthermore, the burden that would be placed on state actors such as Strayhorn to guard against tangential arrests of putatively innocent persons or face the prospect of legal action would be so heavy as to effectively preclude their ability to undertake such activities – an actor could

---

[6]The latter two factors are analogous to the rationale behind Strayhorn's First Amendment *Noerr-Pennington* Doctrine argument; however, given the Court's conclusions in the text, the Court need not take up this argument.

not guard against such problems without investigating the issue herself. This would result in duplicative actions by government officials and a waste of government resources, a consequence that must also be taken into the Court's calculus of whether a duty exists here. Aggregating these factors, the Court finds that Strayhorn had no duty to Plaintiff and recommends that this claim be dismissed.

**E.     Abuse of Process**

Finally, Plaintiff alleges an abuse of process cause of action. The elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of a legal process, a use neither warranted nor authorized by the process, (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and (3) plaintiff was damaged as a result of the illegal act. *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 756 (Tex. App. – Houston [14th Dist.] 2000, pet. denied).

Defendants are correct in their argument that Plaintiff does not allege a legal process or procedure that Strayhorn used improperly against him, or, more accurately, does not identify any process at all. Plaintiff, in alleging this tort, does not distinguish among the myriad named defendants in this lawsuit, instead just using the generic "Defendants." *See* Plaintiff's Original Complaint at p. 106 (Clerk's Doc. No. 3). While this charge would certainly be germane to some of the other named defendants, it is inapposite as applied to Strayhorn. Therefore, Plaintiff's claim fails as a matter of law and it is recommended that it be dismissed.

## IV. CONCLUSION

It is clear from the Plaintiff's pleadings that he has been significantly impacted by the events which unfolded when J.D. accused him of sexual assault. There is no doubt that anyone would suffer similarly if wrongly accused of such a crime. It is also clear from the Plaintiff's filings on the

instant motion that he considers Strayhorn as responsible for much of the harm he suffered. While Strayhorn may well have been misguided in her focus on Woodside Trails – something the Court assumes for the purposes of this motion for judgment on Plaintiff's pleadings – that does not make her legally responsible for acts undertaken by others who had independent responsibility for investigating child abuse or criminal activities. Once again, as stated in the Court's previous Interim Report and Recommendation, while what happened to Plaintiff may well have been unfair, that by itself does not create a legal claim.

## V. RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Strayhorn's 12(c) Motion for Judgment on the Pleadings. *See* Clerk's Doc. No. 141.

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of December, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE