**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JACKIE DEWAYNE REYNOLDS** | § | |
| | § | |
| **v.** | § | **A-05-CA-638 LY** |
| | § | |
| **TDFPS ET AL.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Bastrop County, Sheriff Hernandez and Investigator Suriano's Motion for Summary Judgment (Clerk's Doc. No. 211). The motion is before the Court on the referral of the district judge pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. BACKGROUND

Although the facts in this case are many, only a crucial few are germane to the resolution of this motion. From April 2003 to April 2004, Plaintiff Jackie Reynolds was a counselor at Woodside Trails, a therapeutic camp for boys, many of whom were placed there for sex crimes, and several of whom were also the victims of sexual abuse. Reynolds worked closely with one of the boys, J.D. Shortly after Reynolds stopped working with J.D., and J.D. moved to a different facility, J.D. accused Reynolds of sexually abusing him. J.D. initially reported the alleged abuse to a therapist at the new facility, and that therapist then contacted the Texas Abuse and Neglect Hotline on July 9, 2004 to make a report of the allegation. Eventually, J.D. was interviewed, and, based on this interview, Defendant Suriano subsequently prepared a probable-cause affidavit and submitted it to a magistrate in support of the issuance of an arrest warrant for Reynolds. Reynolds was arrested on

July 22, 2004.  Suriano investigated further after the arrest.  This included another interview of J.D.[1]
In that interview, which took place on August 16, 2004, J.D. recanted his claim that Reynolds had
sexually abused him.  The additional investigation also led to Suriano learning that J.D. had
previously made abuse allegations against a cousin and a babysitter, and that before his outcry, J.D.
had threatened to make false allegations of sexual abuse against Reynolds. Notwithstanding the
recantation and this other exculpatory evidence, Suriano and the Bastrop County District Attorney's
Office presented the case to a grand jury, and on August 25, 2004, based on Suriano's presentation,
the grand jury indicted Reynolds for aggravated sexual assault of a child.  Ultimately, in March 2005,
after Reynolds obtained access to a recording of the second interview of J.D. and informed his
defense counsel of the recantation, the Bastrop County District Attorney's Office dismissed the
indictment against Reynolds.  Reynolds then brought this suit on August 12, 2005, complaining
under both federal and state law against numerous parties, including Bastrop County, Steve Suriano
and Richard Hernandez (the Bastrop County Sheriff at the time of Reynolds' arrest and indictment).

In September 2005, Suriano and Hernandez moved to dismiss the charges against them.
Those motions were later converted into summary judgment motions, and after limited discovery
was permitted, on November 15, 2006, the undersigned made a recommendation on those motions
to the district judge.  Clerk's Doc. No. 169.  Acting on that recommendation, on April 3, 2007, Judge
Yeakel dismissed the federal charges against Suriano and Hernandez, but declined to dismiss the
state charges because the Defendants had failed to carry their burden of demonstrating the lack of
any question of fact as to their claim of official immunity on those state claims.  Clerk's Doc. No.
192.  Suriano and Hernandez now move for summary judgment on the state claims against them.

---

[1]The first interview was conducted by another investigator, and Suriano observed it via
closed circuit television.  In the second interview, Suriano was one of the questioners.

This is Bastrop County's first dispositive motion on the claims against it, so its motion addresses both the federal and state law claims.

## II.  ANALYSIS

Reynolds first objects to what he considers to be the untimely filing of the Bastrop County Defendants' motion for summary judgment.  He contends that this amounts to allowing them to take advantage of the April 2007 scheduling order signed by Judge Yeakel, *see* Clerk's Doc. No. 194, an order he argues was meant only for the TDFPS defendants, not the Bastrop County Defendants.  He further states that he (Reynolds) should be allowed more discovery if the Bastrop County Defendants are allowed to proceed with this motion.  This argument is puzzling at best.  All of the Bastrop County Defendants – Steve Suriano, Richard Hernandez, and Bastrop County – are named as defendants on the scheduling order.  It plainly applies to them.  Moreover, Reynolds has been allowed a significant level of discovery.  Reynolds' objection has no merit and is **OVERRULED**.

## A.    Claims against Bastrop County

Bastrop County contends that the §§ 1983, 1985, and 1986 claims against it should be dismissed based on this Court's reasoning in its prior Report and Recommendation (reasoning later adopted by the District Court).  *See* Clerk's Doc. Nos. 169 and 192.  There, the Court relied on *Shields v. Twiss*, a Fifth Circuit case that held that "once facts supporting an arrest are placed before an independent intermediary such as a grand jury, the intermediary's decision breaks the chain of causation for these constitutional violations."  389 F.3d 142, 150 (5th Cir. 2004).  Such claims can "be maintained [only] if the plaintiff affirmatively shows that the deliberations of that intermediary were in some way tainted by the actions of the defendants." *Id.* (citation omitted).  As the Court noted in its earlier Report and Recommendation, Reynolds failed to raise a genuine issue of material

fact that the process was tainted.  *See* Clerk's Doc. No. 169 at 17-18.  Although Reynolds spends considerable time arguing that there are material fact disputes preventing summary judgment in favor of the County, his arguments do not add to what the Court already considered on the previous summary judgment motion.  Therefore, for the reasons just stated, and for the reasons articulated in detail in this Court's Report and Recommendation dated November 15, 2006 (Clerk's Doc. No. 169), Bastrop County's Motion for Summary Judgment on the §§ 1983, 1985, and 1986 claims should be GRANTED.

Similarly, Bastrop County's Motion for Summary Judgment on Reynolds state' law claims against it should be granted.  The Texas Tort Claims Act ("TTCA") waives governmental immunity in certain limited circumstances.  *See* Tex. Civ. Prac. & Rem.Code. Ann. § 101.021; *Reynosa v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 57 S.W.3d 442, 445 (Tex. App – San Antonio 2001, pet. denied).  For a governmental unit – which Bastrop County is –  to be held liable under the act, Reynolds' injuries must have been proximately caused by the operation or use of a motor-driven vehicle or equipment, or by a condition or use of tangible real or personal property. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998).  Plainly, none of those waivers apply in this case, therefore Bastrop County enjoys sovereign immunity against Reynold's state law claims and its motion should be GRANTED as to these claims as well.

## B.    Claims Against Hernandez

Reynolds' federal claims against Hernandez were dismissed by Judge Yeakel's order adopting this Court's earlier Report and Recommendation, but there are still state law claims against Hernandez.  Hernandez moves for summary judgment on these claims, arguing that he is entitled to official immunity under Texas law, and pointing out that his role in the events leading to Reynolds'

4

arrest and indictment was so limited or remote as to preclude any liability on his part.  Reynolds, in his Response, makes no argument as to why there are material fact issues as to his state law claims against Hernandez, other than to point out that Hernandez has since been indicted on public corruption charges.

In all events, beside the fact that "[i]nadequately briefed issues are deemed abandoned," *United States v. Stevens*, 487 F.3d 232, 242 n.1 (5th Cir. 2007), the Court notes that Reynolds has not, in any of his extensive filings, brought facts to light that would indicate a genuine issue of material fact vis-a-vis Hernandez's role in the events he complains of.  Because the undisputed evidence demonstrates that Hernandez had no personal role in investigating J.D.'s allegations, or in obtaining an indictment against Reynolds, and otherwise acted as a reasonable supervising sheriff would act, Hernandez is entitled to official immunity on the state law claims, and the Court recommends that Hernandez's Motion for Summary Judgment be GRANTED.

## C.    Claims Against Suriano

Suriano also contends that he is protected by official immunity from Reynolds' state law claims.[2]  Under Texas law, official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties.  *Telthorster v. Tennell*, 92 S.W.2d 457, 460 (Tex. 2002).  A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith.  *Id.*  To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these elements.  *See University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.

---

[2]These state law claims are claims under Texas law for false arrest, malicious prosecution, gross negligence, intentional infliction of emotional distress, and abuse of process.

2000).  In deciding whether a plaintiff's summary judgment proof conclusively establishes the official-immunity defense, we must determine whether there are disputed facts material to its elements.  *Telthorster*, 92 S.W.3d at 460.

Because the first two immunity elements have been established by undisputed summary judgment evidence, the only issue here is the last element: whether Suriano acted in good faith.  In *Telthorster*, the Texas Supreme Court fleshed out the proper conception of good faith, stating:

> To establish good faith, [the defendant] must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred.  [The defendant] need not prove that it would have been unreasonable not to engage in the conduct, or that all reasonably prudent officers would have engaged in the same conduct.  Rather, he must prove only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision.  That [the defendant] was negligent will not defeat good faith; this test of good faith does not inquire into "what a reasonable person would have done," but into "what a reasonable officer could have believed."

*Telthorster*, 92 S.W.3d at 465 (emphasis in original).

Suriano's argument that he acted in good faith relies primarily on his own attestation, and on the affidavit of defense expert Ben Lively, a former San Antonio police officer.[3]  That affidavit basically restates the facts attested to by Suriano, and then opines that Suriano acted reasonably in his investigation.  Having reviewed this evidence, along with Reynold's controverting evidence, the Court concludes that Reynolds has raised a material fact issue on the question of whether a reasonably prudent officer in Suriano's circumstances might have decided to present for indictment Mr. Reynolds, in the face of all the exculpatory evidence Suriano had in his possession.  Most prominently, before Suriano proceeded with the indictment, he knew that J.D. had recanted his claim

---

[3]Reynolds has filed a motion to strike Lively's affidavit.  The Court will **DENY** this motion (Clerk's Doc. No. 214).

that Reynolds had sexually abused him.  Suriano points to his deposition testimony and affidavit as evidence that he did not credit the recantation; this, however, misses the point of the good faith test laid out in *Telthorster*.  The test is an objective test – what a reasonably prudent officer could have believed – not what Suriano actually believed.  *See id*.  Suriano, prior to Reynolds' indictment, had been given – by Betty Lou Gaines, the Executive Director of Woodside Trails – *more* exculpatory information, beyond the recantation, "including the fact that [J.D.] had previously threatened to make a false allegation against" Reynolds.  *See* Affidavit of Betty Lou Gaines at 4 (Clerk's Doc. No. 162).  Prior to presenting the case to a grand jury, Suriano was aware that J.D. had recanted, that Reynolds had denied the allegations, that J.D. had been the subject of an abuse investigation by Suriano in 2002, and had been identified as a possible perpetrator of that abuse,[4] and that, not long before his accusation, J.D. had threatened to make a false allegation of abuse against Reynolds.  Further, there is evidence that, before presenting the case to the grand jury, Suriano had not made a thorough review of the detailed notes of J.D.'s three-year treatment history at Woodside Trails.  That review would have cast further doubt on J.D.'s credibility, in that the notes document numerous instances of J.D.'s propensity to lie.  Viewing this evidence in the light most favorable to Reynolds, there is plainly a fact question regarding whether a reasonably prudent officer in possession of this information could have believed that J.D.'s recantation was false, and further a fact question regarding whether a reasonably prudent officer – with these facts in hand – could have believed that

---

[4]Although Suriano classified J.D. as the "victim" of the 2002 accusation of sexual abuse at Woodside Trails, Reynolds' affidavit disputes this and contends that the investigation revealed that J.D. was the perpetrator of the sexual abuse.

he had conducted a sufficiently thorough investigation to support a grand jury presentation on the serious charge of aggravated sexual assault of a child.[5]

Reynolds has raised a genuine issue of material fact on the issue of official immunity.[6] Suriano raises no other grounds for summary judgment.  Therefore, the Court recommends that Suriano's motion for summary judgment on Plaintiff's state law claims be DENIED.

### III.  CONTINUED EXERCISE OF PENDENT JURISDICTION

As noted earlier, the District Court dismissed all of the federal law claims against Suriano and Henrandez on April 3, 2007, Clerk's Doc. No. 192, and this Court is recommending that the federal claims against Bastrop County also be dismissed.  Further, on April 3, 2007, the Court dismissed the claims against Defendant Carole Strayhorn. Clerk's Doc. No. 193.  Early in the case, in December 2005, the District Court dismissed Reynolds' claims against the *Dallas Morning News* and Robert Garrett.  Clerk's Doc. No. 75.  Most recently, on August 9, 2007, Plaintiff and the TDFPS Defendants notified the Court that they had reached a settlement of all claims between them, and on October 23, 2007, those parties filed an agreed motion to dismiss all claims against the TDFPS Defendants.  Clerk's Doc. No. 230.  Given all of this, if the District Court adopts the recommendations contained herein, the sole remaining defendant will be Steve Suriano, and the only claims pending against him will be state law claims.

---

[5]Ben Lively's affidavit, because it relies entirely on the facts as Suriano presents them, fails to address whether a reasonably prudent officer in possession of the additional information discussed in the text – and not considered by Lively – could have acted as Suriano did.  Thus, nothing in Lively's affidavit supports the entry of summary judgment for Suriano on the contested factual record before the Court.

[6]Nor should it escape notice that the criminal charges were later dropped and that the State Office of Administrative Hearings has ruled that "there is no evidence that Mr. Reynolds sexually abused [J.D.]."  *See* Interim Report and Recommendation, Clerk's Doc. No. 169 at 4, n.4.

These state law claims are before the Court only through the Court's pendent jurisdiction. Pendent jurisdiction "is a doctrine of discretion," and district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons. *United Mine Workers v. Gibbs*, 383 U.S. 715 at 726-27 (1966). *See also, Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("As articulated by *Gibbs*, the doctrine of pendent jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."). The Fifth Circuit has directed that "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* at 623. When the balance of these factors indicates that a case properly belongs in state court, such as when – like here – the federal-law claims have dropped out of the lawsuit and only state law claims remain, the district court should decline to exercise jurisdiction, and dismiss the case without prejudice. *Id.* at 619.

Further, it is clear that, so long as he re-files in state court within 60 days of an order of dismissal, Reynolds can re-file his claims against Suriano in Texas state district court without any statute of limitations issues. Tex. Civ. Prac. & Rem. Code Ann. §16.064. Section 16.064 states that:

> (a)    The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:
>
> (1)    because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

> (2)    not later than the 60th day after the date the dismissal or other
> disposition becomes final, the action is commenced in a court
> of proper jurisdiction.

In *Vale v. Ryan*, 809 S.W.2d 324 (Tex. App. – Austin 1994, no pet.), the Austin Court of Appeals held that "[a] federal court's refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction," as required in § 16.064(a)(1). *Id.* at 327. The court more recently reaffirmed that view in *Ruiz v. Austin Ind. School Dist.*, 2004 WL 1171666 (Tex. App. Austin 2004, no pet.). Federal courts applying Texas law have reached the same conclusion. *See, e.g., Youngblood Group v. Lufkin Fed. Savings & Loan Ass'n*, 932 F.Supp. 859, 876-77 (E.D. Tex. 1996). Accordingly, so long as Reynolds re-files his state law claims against Suriano within 60 days of a final order of dismissal under *Gibbs*, his claims will be preserved for prosecution in Texas state court, and dismissal will not cause him prejudice. Based on the above, the Court RECOMMENDS that the District Court dismiss without prejudice Plaintiff's state law claims against Suriano so that those claims may be pursued in Texas state court.

## IV.  RECOMMENDATION

Based on the above, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART, AND DENY IN PART** Defendant Bastrop County, Sheriff Hernandez and Investigator Suriano's Motion for Summary Judgment (Clerk's Doc. No. 211). The Court **RECOMMENDS** that the District Court **GRANT** Bastrop County's and Richard Hernandez's Motion for Summary Judgment. The Court further **RECOMMENDS** that the District Court **DENY** Investigator Suriano's Motion for summary judgment. Finally, the Court **RECOMMENDS** that the District Court **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against Suriano pursuant to *United Mine Workers v. Gibbs*.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of November, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE